IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————————————————

IN RE: ORTHOPEDIC BONE SCREW
PRODUCTS LIABILITY LITIGATION                MDL Docket No. 1014

———————————————————

This Document Relates to:
Fanning, et al. v. AcroMed Corporation, et al.,
Civ. Action No. 97-381 and
ALL ACTIONS

———————————————————

## MEMORANDUM AND ORDER
## PRETRIAL ORDER NO. 2166

Presently before the Court is the Liaison Counsel for Plaintiff's Legal

Committee's Amended Motion for Entry of Rule to Show Cause to Obtain Court

Approval for the Distribution of Settlement Funds to the United States Government to

Resolve Medicare Secondary Payor Act Claims.  For the reasons stated below, the Court

hereby grants that motion, in effect, approving the proposed means of accumulating

funds to distribute $3,500,000 to the United States Government in settlement of certain

Medicare and related claims.

The procedural background case of this case is as follows: this MDL matter

consists of, for present purposes, a class based settlement of certain claims against

defendant AcroMed Corporation and certain other released parties.  On July 11, 2006, the

United States filed a separate action captioned *United States v. Depuy Spine,* Civil Action

No. 06-3039, which sought reimbursement and other relief in connection with Medicare

benefits extended to members of the settling class of AcroMed recipients in connection with medical treatment related to the implantation of an AcroMed device.

The action filed by the government resulted in a settlement by which the government would be paid $3,500,000 out of the settlement fund.

The Court then directed the parties and the Claims Administrator to develop and propose a means by which that $3,500,000 could be paid out of the fund while still accomplishing fairness to the various claimants who have yet to receive their final distribution from the fund.

In response, on February 22, 2008, liaison counsel filed the instant motion proposing a method to accumulate funds sufficient to pay the government's claim which is set forth below in the following proposal taken from the subject motion.

> After lengthy discussions with the Claims Administrator, it was determined that the following process would resolve the means by which the United States' claims should be paid the $3.5 million settlement amount. Based on information available as of February 13, 2008, the Special Master held in trust approximately $9,351,501.73, after taking into account certain reserves for anticipated expenses. Based upon the Special Master's award calculations, claimants with Medicare related claims are entitled to award payments of $6,334,942.76. However, after accounting for the settlement payment to the government and counsel fees and expenses owed to the claimants' counsel, the claims administrator recognized that an accounting shortfall of $2,310,784.75 exists. The accounting is demonstrated as follows:

| | | |
|---|---|---|
| Accounts Available for Distribution | | |
| Before Government Payment | $9,351,501.73 | |
| Less:  Gov't Settlement | -3,500,000.00 | |
| Less:  Claimants' Attorney Fees and Costs | -1,827,343.72 | |
| Net Available for Distribution | | $4,024,158.01 |
| Payment amounts due to Claimants net | | |
| of claimants' attorney fees and costs | | -6,334,942.76 |
| Shortfall of Payment Amounts Which | | |
| Need to be Allocated | | -$2,310,784.75 |

To address this $2.3 million shortfall, two offsets were devised to recover the money needed to pay this amount.  These offsets will be subtracted from claimants' net distributions.  Claimants' net distributions are their final award amounts minus attorney fees and costs.  The first offset will assess only those claimants for whom a balance is still owed to the government for Medicare payments.  Excepted from this group are veterans, medicare claimants that the United States did not identify as owing any medicare payment and medicare claimants that have already repaid the government and medicare claimants who have been granted full waivers.  The amount of the offset will be the lesser of the amount due to the government or the amount of the claimant's net distribution.  This offset will affect 1,055 claimants, reduce 520 claimants' recoveries to zero, but overall recover $1,806,716.00 of the shortfall.

To account for the remaining shortfall of $504,069.00, a second offset will be applied to the net distribution of all remaining claimants.  This offset will reduce each claimants' distribution to 88.87% of their net distribution, and will apply even to the remaining distributive amounts to those claimants that might have already been subject to the first offset.

In response to the filing of the motion, the Court entered PTO 2163 directing the

Claims Administrator to serve a copy of the instant motion upon all claimants and/or

their counsel and setting a schedule for objections to the distribution plan.  Pursuant to

PTO 2163, the Court convened a hearing on April 15, 2008 during which the Court

considered all objections that had been raised either by filing with the Claims

Administrator in accordance with PTO 2163 or by appearance in open court.

As the record reflects, there were no claimants present in Court raising any

objections to the proposed plan of distribution.

At the hearing, the Claims Administrator presented the Court with copies of

fourteen written objections filed by claimants which may be characterized as follows.

First, certain claimants, identified in the Claims Administrator's submission as claimants

C and G-N consisted of objections to the government's assertion that Medicare

expenditures had been made that were related to the final device in question.  The Claims

Administrator reported to the Court that, upon careful examination of claims data

supplied by the government in the form of print-outs, that indeed Medicare expenditures

had been made that were related to the implantation of the spinal device.  However, as to

one claimant, identified as claimant L, the Claims Administrator informed the Court that

a colorable claim had been raised by counsel for the AcroMed claimant that the services

were not related to the spinal device in question and the Court directed further inquiry as

to that claimant.

The remaining claimants who objected raised other general objections to the

entire distribution plan itself or otherwise raised non-specific questions.

At the hearing, the Court indicated its inclination to approve the proposal and by

this order formally directs that the proposal be put into effect for the purpose of

distributing the funds.

The Court concludes that the proposal should be approved based upon the

following considerations.  First, the remaining funds to be distributed are due to a limited

subgroup of persons consisting of those who identified themselves as having a Medicare (or other government program) number, even though a substantial number of them apparently have no spine-related Medicare services associated with their files. Nonetheless, this final distribution is just that, a "final distribution" which comes following at least two previous and substantial distributions.  This means that, as to this final subclass, these persons have already received approximately 95% of the total distribution originally contemplated by the original plan of distribution.  Put in other words, the reduction in this final distribution is relatively modest when considered in light of the overall distribution out of the fund.

Second, the settlement raises a very practical problem which is that any more complicated and individualized process of accumulating funds out of individual awards would necessarily eat up substantial and quite diminished resources.  The Court cannot permit the expenditure of additional resources out of the fund at the risk of diluting the fund even further, especially where, as here, an otherwise fair distribution plan has been proposed.

Third, the Court believes that the distribution plan is a fair one under all circumstances.  The plan is set forth in greater detail in the instant motion, but for present purposes, it is significant that it proposes to account for the funds necessary to pay the government in two steps: first, by paying the government out of the remaining awards otherwise due to specific beneficiaries associated with government claims, but only up to the maximum of the final award expected by those claimants.  Then, in a second step, there is a relatively modest deduction from the awards expected by all other claimants,

including those who are Medicare beneficiaries but who may not have had spine-related services associated with their treatment.

Accordingly, the Court approves the proposed plan and directs the following: (a) the Claims Administrator is directed to arrange for the payment of $3,500,000 to the United States by wire transfer and to present a proposed order to the Court setting forth the actual wire transfer information to assist in completing that transaction; (b) the Claims Administrator is directed to prepare a final distribution matrix proposing the final distributions to all claimants as well as an accounting for attorney's fees and costs in accordance with the procedures followed in the prior distributions; (c) liaison counsel is directed to file all remaining motions, petitions, or other filings necessary to bring this matter to a prompt conclusion; and (d) the Claims Administrator is directed to pay $3,500,000 to the United States of America by wire transfer to account AC-15030001.

IT IS SO ORDERED this 14th day of May, 2008.


BY THE COURT:


*s/ Ronald L. Buckwalter*
RONALD L. BUCKWALTER,   S. J.