## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ORTHOPEDIC BONE SCREW | : | MDL NO. 1014 |
| PRODUCTS LIABILITY LITIGATION, | : | |

## ORDER

**AND NOW**, this 20th day of March, 2014, it is hereby **ORDERED** that the Plaintiffs' Liaison Counsel's Motion to Distribute Residual Class Settlement Funds is **GRANTED**. Pursuant to this Court's authority to permit *cy pres* awards, the Plaintiffs' Liaison Counsel are ORDERED to distribute the residual class settlement funds in their Acromed Litigation Fund in the amount of $222,494.37 (less or more any unknown taxable event or fees) to Penn Medicine's Department of Orthopaedic Surgery to support the creation of an endowed travel fund to allow those training in the Department of Orthopedic Surgery to perform orthopedic work in underserved areas across the globe.

BY THE COURT:

_____
RONALD L. BUCKWALTER, S. J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ORTHOPEDIC BONE SCREW  :      MDL Docket No. 1014
PRODUCTS LIABILITY LITIGATION  :

### ORDER

AND NOW, this _____ day of _____, 2011, it is hereby ORDERED that the

Plaintiffs' Liaison Counsel's Motion to Distribute Residual Class Settlement Funds is

GRANTED.  Pursuant to this Court's authority to permit *cy pres* awards, the Plaintiffs' Liaison

Counsel are ordered to distribute the residual class settlement funds in their Acromed Litigation

Fund in the amount of $222,494.37 (less or more any unknown taxable event or fees) to Penn

Medicine's Department of Orthopaedic Surgery ~~Complex Spine Surgery Program–Western~~

~~Caribbean.~~ to support the creation of an endowed travel fund to allow those training in the Department of Orthopedic Surgery to perform orthopedic work in underserved areas across his/her e.

BY THE COURT:

_____
Buckwalter, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ORTHOPEDIC BONE SCREW  :          MDL Docket No. 1014
PRODUCTS LIABILITY LITIGATION  :

PLAINTIFFS' LIAISON COUNSEL'S MOTION TO
DISTRIBUTE RESIDUAL CLASS SETTLEMENT FUNDS

## I.   INTRODUCTION

On October 17, 1997, this Court (Judge Bechtle) approved a limited fund settlement

between the Plaintiffs Legal Committee ("PLC") and the Acromed Corporation.  As part of its

administrative efforts, the PLC took on the obligation of representing numerous Acromed

recipients as clients.  Thanks to the representation of the PLC, these Acromed clients participated

in the Acromed Settlement to the fullest extent possible.  Over the course of the many years since

its approval, the settlement has been overseen by this Court, the PLC and the Claims

Administrator, Robert E. Welsh, Jr.  Like other Acromed settlement claimants, the PLC's

Acromed clients were issued settlement checks consistent with existing procedures and

protocols.  Unfortunately, due to unknown circumstances, numerous PLC Acromed clients have

not negotiated their payments or have been lost to the PLC despite our best efforts to locate these

clients and inform them of their rewards.

The PLC therefore submits that because the funds remaining in the PLC's Acromed

Litigation Fund are *de minimus, i.e.*, too little to justify any further effort by the PLC to locate

these clients that have been lost or fail to cash their settlement checks, now is the time to request

that the Court allow the PLC to donate the remaining money to an appropriate charity.

1

## II.    FACTUAL BACKGROUND

After many efforts to locate PLC clients to distribute the awards to PLC Acromed clients of their Acromed Settlement shares, $222,494.37 remain to be distributed in the PLC's Acromed Litigation Fund. *See* Register Report attached hereto as Exhibit "A". This small amount continues to sit dormant in the PLC's escrow account.

The clients have become lost to the PLC. They are non-responsive and/or have moved from their last known residence. It appears that the available balance to distribute has become too small to justify further efforts to dispense this money. Whatever amounts are available would prove to be too *de minimus* to attempt to disburse. Thus, Plaintiffs' Liaison Counsel proposes that the remaining funds be donated to an appropriate charity.[1] Specifically, the PLC has located an appropriate recipient of these funds:  Penn Medicine's Department of Orthopaedic Surgery Complex Spine Surgery Program–Western Carribean. This program works in conjunction with the Princess Elizabeth Center for Handicapped Children in Port of Spain, Trinidad to provide care for children with complex orthopedic disorders. *See* Exhibit "B" attached hereto. The work performed by Penn Medicine is largely supported by philanthropic contributions. The distribution of the remaining unclaimed funds held by the PLC would fit hand-in-glove with such a program given the orthopedic nature of the claims that created the money available to distribute.

## III.    ARGUMENT

In the class action context, courts have employed *cy pres* principles to distribute class damages or settlement funds for the benefit of the class where actual distribution to class

---

[1] In this vein, the PLC has waived any fee with regard to distribution of these monies.

2

members is impracticable because of the difficulty in identifying individual claimants and the

excessively high cost of administering individual consumer recoveries. A *cy pres* distribution is

typically approved where, as here, it is difficult, if not impossible, to locate individual class

members or when individual recoveries would be so small as to make distribution economically

impracticable. *See State of New York v. Reebok Int'l Ltd.*, 96 F.3d 44, 49 (2d Cir. 1996)

("Reebok") (*cy pres* distribution appropriate where administration and distribution costs would

consume a large portion of settlement fund); *In re Toys 'R' Us Antitrust Litig.*, 191 F.R.D. 347,

353 (E.D. N.Y. 2000) ("Toys 'R' Us"). In *Toys 'R' Us*, the court stated that the "decision to

forego individual recoveries was sensible, given the difficulty of identifying proper claimants and

the difficulty, and especially the cost, that such recoveries and their administration would have

entailed." *Toys 'R' Us*, 191 F.R.D. at 353; *see also Reebok*, 96 F.3d at 49 (the Second Circuit

observed that the "impracticability of attempting to distribute the settlement proceeds among the

multitude of unidentified possible claimants is obvious.").

Generally, the *cy pres* funds are paid to a third party such as a charitable organization or

agency for use for designated purposes. *In re Baby Products Antitrust Litigation*, 708 F.3d 163,

172 (3d Cir. 2013). In addition to the financial benefits a *cy pres* recovery indirectly confers on a

consumer settlement class, approving a *cy pres* recovery plan in this instance further serves the

interests of both the plaintiffs and the general public by disgorging settling defendants of any

ill-gotten gains and by deterring future malfeasance. *See Reebok*, 903 F.Supp. at 537 ("The

distribution method here served the general public interests, the interests of the plaintiffs and the

consumers and the public interest of disgorgement and deterrence"); *Toys 'R' Us*, 191 F.R.D. at

356 ("The Settlements, with their significant monetary costs to the defendants, must be evaluated

3

not only in terms of their direct value to the public but also in terms of their deterrent effect on

antitrust violators, an effect of value to consumers").[2]

## IV.    CONCLUSION

WHEREFORE, Plaintiffs Liaison Counsel respectfully requests that the Court order that

the remaining funds held in the PLC's Acromed litigation Fund (less or more any unknown

taxable event or fees) be disbursed to an appropriate charity, *i.e.*, Penn Medicine Department of

Orthopedic Surgery Complex Spine Surgery Program—Western Carribean.  A proposed Order is

attached hereto.

Respectfully submitted,

Dated: May 17, 2013

By:___/s/ Fred S. Longer_____
            Arnold Levin, Esquire
            Michael D. Fishbein, Esquire
            Fred S. Longer, Esquire
            LEVIN, FISHBEIN, SEDRAN & BERMAN
            510 Walnut Street, Suite 500
            Philadelphia, PA 19106
            Phone: (215) 592-1500
            Fax: (215) 592-4663

            ***PLAINTIFFS' LIAISON COUNSEL***

---

[2] Other, ample authority exists for making such awards. *See In re Infant Formula Multidistrict Litig.*, 2005 WL 2211312, at *2-*3 (N.D. Fla. Sept. 8, 2005) ($1,010,073.17 unclaimed funds donated to the American Red Cross); *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 362 F.Supp.2d 574, 576-77 (E.D. Pa. 2005) ($436,000 donated to NFL Youth Education Town Centers); *In re Motorsports Merchandise Antitrust Litig.*, 160 F.Supp.2d 1392 (N.D. Ga. 2001) ($2.4 million of unclaimed settlement funds donated to nine charities); *In re Mexico Money Transfer Litig.*, 164 F.Supp.2d 1002, 1031-34 (N.D. Ill. 2000), *aff'd*, 267 F.3d 743 (7th Cir. 2001), *cert. denied*, 535 U.S. 1018 (2002) ($4.6 million donated to charities); *Powell v. Georgia-Pacific Corp.*, 119 F.3d 703 (8th Cir. 1997) ($1 million donation to scholarship funds); *Superior Beverage Co. v. Owens-Illinois, Inc.*, 827 F.Supp. 477 (N.D. Ill. 1993) ($2 million donated to 14 non-profit legal groups, law schools and an art museum).

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ORTHOPEDIC BONE SCREW   :          MDL Docket No. 1014
PRODUCTS LIABILITY LITIGATION   :

## PLAINTIFFS' LIAISON COUNSEL'S MEMORANDUM
## OF LAW IN SUPPORT OF MOTION TO DISTRIBUTE
## RESIDUAL CLASS SETTLEMENT FUNDS

Plaintiffs' Liaison Counsel has filed a Motion to Distribute Residual Class Settlement

Funds. For the reasons set forth in the motion, it is respectfully requested that the relief

requested be granted.

Respectfully submitted,


Dated: May 17, 2013


By:   /s/ Fred S. Longer
          Arnold Levin, Esquire
          Michael D. Fishbein, Esquire
          Fred S. Longer, Esquire
          LEVIN, FISHBEIN, SEDRAN & BERMAN
          510 Walnut Street, Suite 500
          Philadelphia, PA 19106
          Phone: (215) 592-1500
          Fax: (215) 592-4663

          *PLAINTIFFS' LIAISON COUNSEL*

# EXHIBIT A

Register Report - All Dates

2/9/1999 through 04/26/2013

| Date | Num | Description | Memo | Category | Clr | Amount |
|------|-----|-------------|------|----------|-----|--------|
| 6/30/2008 | 3045 | Allen Fisher | PTO #2166 | Settlement | | -6,485.97 |
| 12/16/2005 | 2759 | Amy Polk-White | PTO #2134 | Settlement | | -2,243.07 |
| 6/30/2008 | 3137 | Ann Thomas | PTO #2166 | Settlement | | -926.57 |
| 6/30/2008 | 3268 | Arthur Ray | PTO #2166 | Settlement | | -787.66 |
| 6/30/2008 | 3073 | Barbara Brenzel | PTO #2166 | Settlement | | -3,119.08 |
| 6/30/2008 | 2979 | Bennie Harris | PTO #2166 | Settlement | | -2,918.47 |
| 6/30/2008 | 3287 | Betty Jones | PTO #2166 | Settlement | | -5,250.54 |
| 6/30/2008 | 2996 | Bobby Quinn | PTO #2166 | Settlement | | -1,853.14 |
| 12/16/2005 | 2831 | Carl Arvin | PTO #2134 | Settlement | | -1,035.27 |
| 6/30/2008 | 3123 | Carl Kurtz | PTO #2166 | Settlement | | -85.18 |
| 6/30/2008 | 3088 | Catherine Williams | PTO #2166 | Settlement | | -1,116.09 |
| 6/30/2008 | 3211 | Charles Ethridge | PTO #2166 | Settlement | | -1,853.14 |
| 6/30/2008 | 3170 | Cheryl Letson | PTO #2166 | Settlement | | -2,869.53 |
| 6/30/2008 | 3197 | Cheryl Stoll | PTO #2166 | Settlement | | -1,425.52 |
| 6/30/2008 | 3190 | Christina Kincaid | PTO #2166 | Settlement | | -1,853.14 |
| 12/16/2005 | 2685 | Cindy McCann | PTO #2134 | Settlement | | -1,725.45 |
| 12/16/2005 | 2926 | Curtis Stinson | PTO #2134 | Settlement | | -1,552.90 |
| 6/30/2008 | 3272 | Daniel Lacy (Estate) | PTO #2166 | Settlement | | -2,779.70 |
| 12/16/2005 | 2844 | Daniel Lozano | PTO #2134 | Settlement | | -1,552.90 |
| 12/16/2005 | 2889 | David Agnew | PTO #2134 | Settlement | | -2,464.20 |
| 2/20/2006 | 2940 | David Sircloumb | PTO #2139 | Settlement | | -3,872.31 |
| 6/30/2008 | 3148 | Deanna Horn | PTO #2166 | Settlement | | -463.28 |
| 12/16/2005 | 2762 | Donald Boles | PTO #2134 | Settlement | | -1,035.27 |
| 6/30/2008 | 3136 | Donald Campbell, Jr. | PTO #2166 | Settlement | | -2,470.85 |
| 6/30/2008 | 3218 | Donna Dreher | PTO #2166 | Settlement | | -4,015.13 |
| 12/16/2005 | 2701 | Dwane Sparkman | PTO #2134 | Settlement | | -2,070.54 |
| 6/30/2008 | 3061 | Elmer Scott Jr. | PTO #2166 | Settlement | | -2,081.51 |
| 12/16/2005 | 2859 | Ernest Wood | PTO #2134 | Settlement | | -1,035.27 |
| 12/16/2005 | 2893 | Ernestine Davis | PTO #2134 | Settlement | | -1,056.09 |
| 6/30/2008 | 3192 | Evelyn Russell | PTO #2166 | Settlement | | -3,397.41 |
| 6/30/2008 | 3130 | Evelynlene Elkins | PTO #2166 | Settlement | | -2,470.85 |
| 12/16/2005 | 2857 | Frank Perry Jr. | PTO #2134 | Settlement | | -517.63 |
| 12/16/2005 | 2887 | Gail Sherron | PTO #2134 | Settlement | | -1,725.45 |
| 12/16/2005 | 2700 | Gerald McMenamin | PTO #2134 | Settlement | | -1,035.27 |
| 12/16/2005 | 2882 | Gerry Lane | PTO #2134 | Settlement | | -1,725.45 |
| 12/16/2005 | 2933 | Gerry Wells McNay | PTO #2134 | Settlement | | -2,992.25 |
| 6/30/2008 | 3099 | Harold Krammes | PTO #2166 | Settlement | | -1,691.58 |
| 6/30/2008 | 3150 | Harry Chambers | PTO #2166 | Settlement | | -2,470.85 |
| 6/30/2008 | 3132 | Ivan Fredrickson | PTO #2166 | Settlement | | -2,470.85 |
| 6/30/2008 | 3173 | James Smith | PTO #2166 | Settlement | | -821.33 |

| | | | | | |
|---|---|---|---|---|---|
| 12/16/2005 | 2852 | James Williams | PTO #2134 | Settlement | -2,070.54 |
| 12/16/2005 | 2917 | Janice Williams | PTO #2134 | Settlement | -1,056.09 |
| 6/30/2008 | 3069 | Jeffrey Johnson | PTO #2166 | Settlement | -1,853.14 |
| 6/30/2008 | 3284 | Jeffrey Mankiewicz | PTO #2166 | Settlement | -926.57 |
| 6/30/2008 | 3032 | Jerry Orange | PTO #2166 | Settlement | -2,470.85 |
| 6/30/2008 | 3089 | Jimmy Miller | PTO #2166 | Settlement | -1,853.14 |
| 6/30/2008 | 3188 | Joan Kemple-Lopus | PTO #2166 | Settlement | -3,706.26 |
| 12/16/2005 | 2867 | John Cotten | PTO #2134 | Settlement | -1,725.45 |
| 6/30/2008 | 3224 | John Mitchell | PTO #2166 | Settlement | -1,951.12 |
| 12/16/2005 | 2849 | Joseph Baron | PTO #2134 | Settlement | -1,207.82 |
| 12/16/2005 | 2932 | Joseph Baron | PTO #2134 | Settlement | -1,584.13 |
| 6/30/2008 | 3107 | Judith Taglieri | PTO #2166 | Settlement | -926.57 |
| 6/30/2008 | 3267 | Julie Rehman | PTO #2166 | Settlement | -945.2 |
| 6/30/2008 | 3248 | June Dunleavy | PTO #2166 | Settlement | -2,625.28 |
| 12/16/2005 | 2845 | Kamalaben Shah | PTO #2134 | Settlement | -1,035.27 |
| 6/30/2008 | 3277 | Karen Underwood | PTO #2166 | Settlement | -472.6 |
| 6/30/2008 | 3237 | Kathleen Corbett | PTO #2166 | Settlement | -2,470.85 |
| 6/30/2008 | 2991 | Kenneth Connolly | PTO #2166 | Settlement | -1,961.49 |
| 6/30/2008 | 3199 | Kevin Asher | PTO #2166 | Settlement | -2,470.85 |
| 6/30/2008 | 3037 | Kim Christensen | PTO #2166 | Settlement | -1,853.14 |
| 12/16/2005 | 2880 | Kimberly Baehl | PTO #2134 | Settlement | -1,552.90 |
| 6/30/2008 | 3109 | L. Benner | PTO #2166 | Settlement | -2,470.85 |
| 6/30/2008 | 3254 | Lana Mellies-Culver | PTO #2166 | Settlement | -2,205.46 |
| 6/30/2008 | 3003 | Larry Reese | PTO #2166 | Settlement | -2,470.85 |
| 12/16/2005 | 2838 | Laura Pello | PTO #2134 | Settlement | -1,035.27 |
| 12/16/2005 | 2779 | Leslie Paul | PTO #2134 | Settlement | -2,760.52 |
| 6/30/2008 | 3090 | Louis Matthews | PTO #2166 | Settlement | -926.57 |
| 6/30/2008 | 3161 | Marcia Herzog | PTO #2166 | Settlement | -926.57 |
| 12/16/2005 | 2928 | Maria Loper | PTO #2134 | Settlement | -2,288.18 |
| 6/30/2008 | 3039 | Marilyn Rightsell | PTO #2166 | Settlement | -3,397.41 |
| 6/30/2008 | 3105 | Marion Gazdik | PTO #2166 | Settlement | -463.63 |
| 6/30/2008 | 3126 | Mark Andrews | PTO #2166 | Settlement | -2,779.70 |
| 6/30/2008 | 3249 | Marvin Applin | PTO #2166 | Settlement | -2,205.46 |
| 12/16/2005 | 2797 | Mary Drew | PTO #2134 | Settlement | -1,035.27 |
| 12/16/2005 | 2801 | Mary Hovick | PTO #2134 | Settlement | -148.24 |
| 6/30/2008 | 3285 | Melvin Taylor | PTO #2166 | Settlement | -2,520.54 |
| 6/30/2008 | 3050 | Michael Ballard | PTO #2166 | Settlement | -2,470.85 |
| 12/16/2005 | 2745 | Michael Branca | PTO #2134 | Settlement | -517.63 |
| 12/16/2005 | 2919 | Michael Ruiz | PTO #2134 | Settlement | -2,112.17 |
| 6/30/2008 | 3223 | Michelle Ybarra | PTO #2166 | Settlement | -1,280.72 |
| 6/30/2008 | 3022 | Mildred Gross | PTO #2166 | Settlement | -1,402.24 |
| 12/16/2005 | 2775 | Nancy Swan | PTO #2134 | Settlement | -2,070.54 |
| 6/30/2008 | 3014 | Norma Anderson | PTO #2166 | Settlement | -1,853.14 |
| 6/30/2008 | 3227 | Norman Coffin Sr. | PTO #2166 | Settlement | -926.57 |
| 6/30/2008 | 3167 | Norman Olsen | PTO #2166 | Settlement | -580.97 |
| 6/30/2008 | 3203 | Patricia Megna | PTO #2166 | Settlement | -685.23 |
| 6/30/2008 | 3046 | Patrick Totten | PTO #2166 | Settlement | -509.18 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 6/30/2008 | 3244 | Pedro Adame | PTO #2166 | Settlement | -1,853.14 |
| 6/30/2008 | 3279 | Pedro Torres | PTO #2166 | Settlement | -1,890.40 |
| 6/30/2008 | 3255 | Phillip Bivins | PTO #2166 | Settlement | -1,853.14 |
| 6/30/2008 | 3006 | Richard Duganich | PTO #2166 | Settlement | -4,518.58 |
| 6/30/2008 | 3239 | Richard Heinrich | PTO #2166 | Settlement | -3,397.41 |
| 6/30/2008 | 3013 | Richard Schermerhorn | PTO #2166 | Settlement | -1,972.39 |
| 6/30/2008 | 3110 | Robert Robinett | PTO #2166 | Settlement | -1,670.58 |
| 6/30/2008 | 3278 | Robert Tyree | PTO #2166 | Settlement | -945.2 |
| 1/2/2002 | 1942 | Rodger North | PTO #2044 | Settlement | -1,366.59 |
| 12/16/2005 | 2746 | Rodger North | PTO #2134 | Settlement | -517.63 |
| 6/30/2008 | 3048 | Roger Blom | PTO #2166 | Settlement | -463.28 |
| 12/16/2005 | 2929 | Roger Oswald | PTO #2134 | Settlement | -2,070.54 |
| 6/30/2008 | 3214 | Roger Pulsipher | PTO #2166 | Settlement | -2,470.85 |
| 6/30/2008 | 3085 | Ronald Frost Sr. | PTO #2166 | Settlement | -86.21 |
| 6/30/2008 | 3264 | Rose Mari Karnik | PTO #2166 | Settlement | -154.43 |
| 6/30/2008 | 3180 | Rosina Gillen | PTO #2166 | Settlement | -926.57 |
| 6/30/2008 | 3113 | Roxanne Baumeister | PTO #2166 | Settlement | -2,137.19 |
| 6/30/2008 | 3008 | Sandra Harlow | PTO #2166 | Settlement | -1,782.63 |
| 12/16/2005 | 2876 | Sheila Dalzin | PTO #2134 | Settlement | -2,760.72 |
| 12/16/2005 | 2767 | Stacey Fortson | PTO #2134 | Settlement | -2,760.72 |
| 6/30/2008 | 3095 | Steve Sutton | PTO #2166 | Settlement | -107.53 |
| 6/30/2008 | 3191 | Steven Vaughn | PTO #2166 | Settlement | -1,643.83 |
| 6/30/2008 | 3102 | Susan Becker | PTO #2166 | Settlement | -926.57 |
| 1/2/2002 | 2056 | Suzanne Kasecamp (Estate) | PTO #2044 | Settlement | -2,752.70 |
| 6/30/2008 | 3286 | Sydney Wood (Estate) | PTO #2166 | Settlement | -1,853.14 |
| 6/30/2008 | 3240 | Thomas Bryant | PTO #2166 | Settlement | -4,015.13 |
| 12/16/2005 | 2716 | Thomas Fitzpatrick | PTO #2134 | Settlement | -2,760.72 |
| 6/30/2008 | 3120 | Thomas Schoenbeck | PTO #2166 | Settlement | -3,397.41 |
| 6/30/2008 | 3274 | Timothy Wysong | PTO #2166 | Settlement | -3,397.41 |
| 6/30/2008 | 3042 | Victoria Steele | PTO #2166 | Settlement | -1,181.91 |
| 6/30/2008 | 3184 | William Sauls Sr. | PTO #2166 | Settlement | -926.57 |
| 6/30/2008 | 3114 | William Young | PTO #2166 | Settlement | -1,853.14 |

-222,494.37

# EXHIBIT B

PENN MEDICINE

# Department of Orthopaedic Surgery
## Complex Spine Surgery Program:
### Western Caribbean

CONTENTS

**Complex Spine Surgery Program**

**Organization & Funding**

**The Penn Medicine Mission**



**Penn Medicine**
Perelman School of Medicine
University of Pennsylvania Health System

1

## Penn Medicine's Complex Spine Surgery Program in the Western Caribbean




Since 1953 the Princess Elizabeth Center for Handicapped Children in Port of Spain, Trinidad has provided care for children with complex orthopaedic disorders. Dr. David Toby, Orthopaedic Surgeon at the Princess Elizabeth Center, has been overseeing the Center's Scoliosis Program for the past 25 years. Starting in 2006, Dr. Vincent Arlet, Chief of Spine Surgery at the University of Pennsylvania, began traveling to Trinidad to assist Dr. Toby with scoliosis and orthopaedic surgeries.

The setup of a complex spine deformity surgical program in a country like Trinidad presents many challenges. Penn Orthopaedics is proud to be able to offer expert support in patient care and training through this valuable partnership.

*Dr. David Toby, Orthopaedic Surgeon, Princess Elizabeth Center and Dr. Vincent Arlet, Chief of Spine Surgery, University of Pennsylvania*

### Establishing a Team

Dr. Toby is the only spinal deformity surgeon on the island of Trinidad and receives referrals from across the West Indies to perform scoliosis and pediatric orthopaedic surgery. For these complex cases a team approach is required; two experienced spine surgeons, an anesthesiologist specializing in total intravenous anesthesia, an electrophysiology technician to monitor the spinal cord throughout the procedure and experienced OR nurses. Our key team members are Dr. Toby and Dr. Arlet, Dr. Rodney Benjamin, and dedicated OR nurses, like Geeta Pollard. Ms. Pollard has traveled to the US to study with Dr. Arlet and observe nursing and OR techniques, to improve and bring the nursing skills required for complex spine surgery back to Trinidad.

*Pre (Images A,B) and post operative (Images C,D) photographs and x-rays of a 22 years old girl with a 89 degrees scoliosis.*







Image A          Image B          Image C          Image D


Penn Medicine
Perelman School *of* Medicine
University *of* Pennsylvania Health System



*Drs. Roby and Arlet operating in Trinidad*

### *Training Penn's Future Leaders Through Humanitarian Experience*

By sending Penn faculty to Trinidad, we are enriching the education experience for Penn Orthopaedic's residents and fellows, while simultaneously providing a service to this community. Our goal is to endow a program that funds annual resident travel to Trinidad, and other international areas in need, to assist with complicated surgeries in challenging environments. Having a spinal deformity outreach program is highly beneficial for an academic orthopaedic program, as it allows residents and fellows the ability to gain critical experience for their developing careers. We believe that providing travel opportunities for residents while they are in training will deepen their dedication to providing care to those in need. Traveling to less privileged areas and experiencing, first-hand, the medical care available can instill a lifelong passion for service in these residents and a more in-depth understanding of their field.

### *Funding Travel*

With recent restrictions on available funding for residents and physicians, travel to countries in need has become increasingly difficult. Through philanthropic contributions from generous donors we can establish a formal, structured program to enhance the training of our residents. Dr. Arlet typically completes four rotations a year, each lasting five or six days- four spent in the operating room. With a gift of $200,000 to the Department of Orthopaedic Surgery's Resident Travel Endowment, we can provide annual travel stipends for two orthopaedic residents to travel to underserved countries, and train under conditions drastically different than those they accustomed to. Upon their return, their experiences give Penn Orthopaedics an advantage in continuing to treat some of the most complex cases in the region.

To learn more about this initiative and other ways to support the Department of Orthopaedic Surgery, please contact Vanessa White, Executive Director of Development and Alumni Relations for the University of Pennsylvania Health System, at vanwhite@upenn.edu or (215)898-9692.



**Penn Medicine**
Perelman School of Medicine
University of Pennsylvania Health System

# The Penn Medicine Mission

Penn Medicine, a non-profit organization, is a world-

renowned institution dedicated to discoveries that will

advance science and patient care throughout the world,

and to the education of the physicians and scientists of

tomorrow to carry on our legacy of excellence.

MAKING 🛡 HISTORY | Penn Medicine
THE CAMPAIGN FOR PENN

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the forgoing Plaintiffs'

Liaison Counsel's Motion to Distribute Residual Class Settlement Funds was electronically filed

with the Clerk of Court of the United States District Court for the Eastern District of Pennsylvania

by using the CM/ECF System, which will send a notice of electronic filing in accordance with the

procedures established in MDL 1014 on this 17th day of May, 2013.


/s/ Fred S. Longer
Arnold Levin, Esquire
Michael D. Fishbein, Esquire
Fred S. Longer, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663

## CASES APPROVING A *CY PRES* DISTRIBUTION

Ripley v. Sunoco, Inc., 287 F.R.D. 300, 316 (E.D. Pa. 2012) (Robreno, J.)

*Approval of Reversionary Interest Beneficiary*

Lastly, at oral argument, Plaintiffs indicated any residual or unclaimed funds from
the settlement would revert to a mutually agreed upon beneficiary. Upon the
Court's order, the parties informed the Court that the cy pres beneficiary in this
case would be Philadelphia Area Project on Occupational Safety and Health
("PhilaPOSH"). PhilaPOSH is an organization comprised of unions, health, and
legal professionals focused on health and safety concerns faced by workers and
their unions. See PhilaPOSH Mission Statement, http:// www. philaposh. org/
mission_ statement. htm (last visited June 25, 2012). Since its founding in 1975,
PhilaPOSH's mission has been "the prevention of injury, disease and death on the
job through information, education, technical assistance and political action." Id.
After review of PhilaPOSH's background and mission statement, and upon
agreement of the parties, the Court designates PhilaPOSH as the cy pres
beneficiary in this case.

Cosgrove v. Citizens Auto. Finance, Inc., No. Civ.A.09-1095, 2011 WL 3740809, at *7–8 (E.D.
Pa. Aug. 25, 2011) (Schiller, J.)

9. Cy pres

Finally, the settlement provides that the residue of unclaimed checks shall be
distributed on a cy pres basis to Community Legal Services of Philadelphia and
Mid–Penn Legal Services in equal shares. Both organizations provide consumer
credit education and similar services. (Pl.'s Mot. for Approval 23.) The Court
finds these are worthy cy pres recipients, as they will help to redress the types of
wrongs alleged in this litigation. See Perry v. FleetBoston Fin. Corp., 229 F.R.D.
105, 117 (E.D.Pa.2005) (discussing the appropriateness of cy pres distribution in
consumer credit class actions involving relatively small individual recoveries).

In re Baby Products Antitrust Litigation, 708 F.3d 163, 176 (3d Cir. 2013) (Ambro, J.)

We place no absolute requirement on the amount of direct compensation the third
category of claimants must receive. Courts of appeals have approved cy pres
distributions where all class members submitting claims have already been fully
compensated for their damages by prior distributions. See, e.g., In re Lupron
Mktg. & Sales Practices Litig., 677 F.3d 21, 34–35 (1st Cir.2012). A cy pres
distribution is considered appropriate in that circumstance because additional

individual distributions would "overcompensat [e] claimant class members at the expense of absent class members." Id. at 35 (citing In re Pharm. Indus., 588 F.3d at 34–36). We agree, but do not limit cy pres distributions to instances where all claimants have received 100% of their estimated damages. As the parties explain, the $5 payment to claimants in the third category can be seen as compensation for a full release of their claims rather than as an attempt to compensate them for their damages. Indeed, provided the class as a whole received sufficient direct benefit, it would not have been unreasonable to eliminate the $5 category altogether and require class members to submit documentary proof to receive any award. We do not intend to raise the bar for obtaining approval of a class action settlement simply because it includes a cy pres provision.

Gates v. Rohm and Haas Co., No. Civ.A.06-1743, 2011 WL 1103683, at *2, 5 (E.D. Pa. Mar. 24, 2011) (Pratter, J.)

CY PRES DISTRIBUTION

"When an aggregate class recovery is not fully allocated to class members, the unclaimed portion may be distributed for the indirect or partial benefit of the class under cy pres principles." 3 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 10:16 (4th ed.2002). In the class action context, courts have used cy pres principles to distribute remaining unclaimed settlement funds to accomplish an indirect benefit for the class. See In re Linerboard Antitrust Litig., MDL No. 1261, 2008 WL 4542669 (E.D.Pa. Oct.3, 2008) (applying the cy pres doctrine in distributing unclaimed settlement funds in a class action); Schwartz v. Dallas Cowboys Football Club, Ltd., 362 F.Supp.2d 574 (E.D.Pa.2005) (applying cy pres principles to determine the distribution of excess class settlement funds); In re Matzo Food Prods. Litig., 156 F.R.D. 600, 605 (D.N.J.1994) (discussing cy pres as a principle for possible distribution of remaining funds in the context of preliminary approval). FN2 Courts generally "have approved charitable donations to organizations geared toward combating harms similar to those that the injured the class members. Such a donation may serve the cy pres principle of indirectly benefitting all class members." Linerboard, 2008 WL 4542669, at *3 (quotations and citations omitted).

"Federal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds." Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1307 (9th Cir.1990) (citing Van Gemert v. Boeing Co., 739 F.2d 730, 737 (2d Cir.1984)). In applying cy pres principles, the court appropriately may consider: "(1) the objectives of the underlying statute(s), (2) the nature of the underlying suit, (3) the interests of the class members, and (4) the geographic scope of the case." Schwartz, 362 F.Supp.2d at 576 (citing In re Airline Ticket Comm'n Antitrust Litig., 307 F.3d 679, 682 (8th Cir.2002)). Additionally, the Court recognizes that, even in the absence of any philanthropic interests previously expressed by the Class or by counsel, a "frequent use of class

funds not accruing to the class members is a donation to a public or otherwise
non-profit entity combating harms similar to those that injured the class
members." Jones v. Nat'l Distillers, 56 F.Supp.2d 355, 358 (S.D.N.Y.1999); see
also Linerboard, 2008 WL 4542669, at *3 (recognizing the same).

. . .

The Court determines that the cy pres distributions to MCCF, JEPF, MCHS
District 156 Foundation, and NHN are appropriate, recognizing that such
distributions indirectly benefit the class members, because they are made to
organizations that serve McCullom Village, McHenry County, and school districts
for, or adjacent to, McCullom Village. Furthermore, the Settlement Agreement
only provided general guidelines for the disposition of the unclaimed funds, and
within the Agreement's provisions there is no obvious limiting requirement for the
excess funds to benefit only class members, particularly given that the funds were
provided first to give class members the particular benefit of medical monitoring.
Under similar circumstances, courts have recognized the propriety of distributing
unclaimed funds for broader public interest, charitable, and educational purposes.
See Jones, 56 F.Supp.2d at 359 ("[W]hile use of funds for purposes closely related
to their origin is still the best cy pres application, the doctrine of cy pres and
courts' broad equitable powers now permit use of funds for other public interest
purposes by educational, charitable, and other public service organizations."
(citing Superior Beverage Co. v. Owens–Illinois, Inc., 827 F.Supp. 477, 478–79
(N.D.Ill.1993) (collecting cases)); Newberg, supra § 10.24 ("In cases where the
parties have not agreed as part of a settlement for the disposition of such
unclaimed balance, the court ... may order the residual monies to be distributed to
a use completely unrelated to the injured class members, such as to an educational
institution, to a recognized charity or public service organization ...."). The
organizations proposed here promote public interest, charitable, and educational
purposes consistent with the general focus of this settlement.

Although JEPF, MCHS District 156 Foundation, and NHN appear to be deserving
recipients of cy pres funds, the Court nonetheless deems it appropriate to
condition their cy pres distributions. First, the Court was able to confirm through
available public records that Gavers and MCCF are presently registered with the
Illinois Attorney General as charitable organizations and file Charitable
Organization Annual Reports so as to be eligible under applicable state law to
receive any unclaimed settlement funds as a donation. See 760 Ill. Comp. Stat.
55/1 et seq. (Charitable Trust Act); 225 Ill. Comp. Stat. 460/1 et seq. (Solicitation
for Charity Act). The Court, however, was unable to confirm such information for
JEPF, MCHS District 156 Foundation, and NHN. Second, because NHN has only
applied for 501(c)(3) status, it does not presently constitute a 501(c)(3)
organization pursuant to the Settlement Agreement. Based on these
considerations, JEPF, MCHS District 156 Foundation, and NHN may only receive
the proposed cy pres distributions to the extent those organizations, by December

31, 2011, provide Liaison Counsel and Modine with the appropriate documentation to establish that the organization is registered with the Illinois Attorney General and is in compliance with state law requirements, and, specific to NHN only, that the Internal Revenue Service recognizes NHN as a 501(c)(3) organization. If JEPF, MCHS District 156 Foundation, or NHN are not able to meet these conditions, the organization's respective allocation shall be, as previously discussed, distributed to Gavers.

Rosenau v. Unifund Corp., 646 F. Supp. 2d 743, 755–56 (E.D. Pa. 2009) (Rufe, J.)

C. Cy Pres Donation
The final aspect of the Settlement is the cy pres donation, providing that any unclaimed, undistributed or undistributable monies in the settlement fund would be split equally among the Senior Law Center and Legal Aid of Southeastern Pennsylvania.FN86 Although " 'the use of a cy pres *756 distribution remains controversial and unsettled in an adjudicated class action context, courts are not in disagreement that cy pres distributions are proper in connection with a class settlement, subject to court approval of the particular application of the funds.' " FN87 The Court approves this cy pres donation to these particular organizations for the benefit of the Class. Thus, the Court will grant Plaintiff's Motion for final approval of the Settlement.

In re Janney Montgomery Scott LLC Financial Consultant Litigation, No. Civ.A.06-3202, 2009 WL 2137224, at *11 (E.D.Pa. July 16, 2009) (Schiller, J.)

V. THE CY PRES DONATION
The settlement provides that if otherwise eligible class members fail to cash their settlement checks the total amount of these checks shall be set aside. (Stipulation ¶¶ 2.3.2 & 2.9.3.) If this amount exceeds $50,000, the amount over $50,000 shall be redistributed on a proportional basis to those class members who cashed their checks. ( Id.) Any amount less than $50,000 will be distributed to a charity chosen by the Court from a list of three charities jointly submitted by the parties' counsel for the Court's consideration. ( Id.)

As recognized by a leading class action treatise, "[w]hile the use of a cy pres distribution remains controversial and unsettled in an adjudicated class action context, courts are not in disagreement that cy pres distributions are proper in connection with a class settlement, subject to court approval of the particular application of the funds." 4 Newberg § 11.20. Accordingly, "even in circuits that have ruled that cy pres or fluid class recovery distributions are not valid in contested adjudications, these distributions have obtained a stamp of approval as part of a class settlement." Id.; see also Coppolino v. Total CallIntern., Inc., 588 F.Supp.2d 594,605 (D.N.J.2008) (noting that "cy pres distributions are permitted in situations where class recovery cannot feasibly be distributed to individual class members or where unclaimed funds remain following distribution to the class

....”); In re Linerboard Antitrust Litig., MDL No. 1261, 2008 WL 4542669 (E.D.Pa. Oct. 3, 2008) (directing distribution of remaining class funds as a cy pres donation). The Court therefore approves the Stipulation's provision for the charitable donation of unclaimed funds that amount to less than $50,000. If necessary, the parties are directed, following the determination of the amount of the settlement fund associated with checks that are not properly or timely negotiated, to motion for the Court's approval of a charitable donation.

Perry v. FleetBoston Financial Corp., 229 F.R.D. 105, 117–18 (E.D. Pa. 2005) (Schiller, J.)

V. THE CY PRES DONATION

One portion of the settlement warrants special examination: the provision for a $50,000 cy pres donation to an "appropriate non-profit, legal, charitable or educational organization or entity." (Mem. in Supp. of Final Class Settlement at 6.) Cy pres distributions, normally used to disburse the residual funds from unclaimed awards to class members, are not without their critics. See, e.g., George J. Krueger & Judd A. Serotta, Class Action Reform and the Problem of Civil Judicial Confiscation, The Legal Intelligencer, Mar. 10, 2005, at 7. Nevertheless, as recognized by a leading class action treatise, "[w]hile the use of a cy pres distribution remains controversial and unsettled in an adjudicated class action context, courts are not in disagreement that cy pres distributions are proper in connection with a class settlement, subject to court approval of the particular application of the funds." 4 Newberg § 11.20. Accordingly, "even in circuits that have ruled that cy pres or fluid class recovery distributions are not valid in contested adjudications, these distributions have obtained a stamp of approval as part of a class settlement." Id.; see also Does I v. The Gap, Inc., Civ. A. No. 01–0031, 2002 WL 1000073 (D.N. Mar. I. May 10, 2002) (granting preliminary approval of settlement that included cy pres fund); Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1305 (9th Cir.1990) ("Federal courts have frequently approved this remedy in the settlement of class actions where proof of individual claims would be burdensome or distribution of damages costly.").

A cy pres donation, as part of the settlement in the instant litigation, is appropriate. The individual claims of the class members are quite small, perhaps too small to justify individual litigation. "[C]onsumer wrongs often result in claims that are too small to justify individual litigation. In such cases, unless an effective class action right is available, no judicial means of individual redress would be available as a practical matter." *118 2 *118 Newberg § 5:48. Under these circumstances, rather than allowing possible wrongdoing to continue unabated, recovery under a cy pres theory helps address those wrongs. Id.; see also In the Matter of Mexico Money Transfer Litig., 267 F.3d 743 (7th Cir.2001) (affirming adequacy of settlement when class members received no cash benefits but, inter alia, "cy pres relief" to organizations that assist the Mexican–American community).

This litigation seeks to remedy a problem that does not lend itself to large money damages; without the tool of class action litigation this problem might go unaddressed. Still, the dearth of money damages available for individual class members leads to potential distribution problems, and could easily become an obstacle to settlement. Furthermore, by ordering that the cy pres donation be made to the Consumer Bankruptcy Assistance Project and the Consumer Credit Counseling Service of Delaware Valley, whose aims include representing indigent clients seeking to obtain the protection of the bankruptcy court and educating the public about the responsible use of credit, respectively, the settlement will help address the problems that necessitated the filing of this lawsuit originally. Therefore, a cy pres distribution, as part of the overall settlement, is a creative and useful means of achieving a fair and reasonable resolution.

Schwartz v. Dallas Cowboys Football Club, Ltd., 362 F. Supp. 2d 574, 576–77 (E.D. Pa. 2005) (Robreno, J.).

> To determine how the funds should be distributed, the parties suggest that the Court apply cy pres principles. "The cy pres doctrine originated as a rule of construction to save a testamentary charitable gift that would otherwise fail, allowing 'the next best use of the funds to satisfy the testator's intent as near as possible.' " In re Airline Ticket Comm'n Antitrust Litig., 268 F.3d 619, 625 (8th Cir.2001) ( "Airline Ticket I" ) (citation omitted). A court may also utilize cy pres principles to distribute unclaimed funds from a class action settlement. See In re Airline Ticket Comm'n Antitrust Litig., 307 F.3d 679, 682 (8th Cir.2002) ( "Airline Ticket II" ). In so doing, the court should consider (1) the objectives of the underlying statute(s), (2) the nature of the underlying suit, (3) the interests of the class members, and (4) the geographic scope of the case. See id.
>
> [3] Given that the settlement agreement in this case did not address the disposition of excess funds, that the defendants have waived any claim to a reversionary interest in the unclaimed funds,FN1 and considering the circumstances of this case, the Court will apply cy pres teachings in determining how the excess funds should be distributed.
>
> [4] To begin, the plaintiffs' proposed distribution must be rejected. First, distribution of the excess funds to a student legal clinic is not needed to promote the policies of the Sherman and Clayton Acts, the underlying statutes at issue in this case. These venerable statutes, particularly the Sherman Act, which has been called "our charter of economic freedom," strive to prevent monopolistic and collusive behavior on the part of economic entities which harms consumers and distorts the operation of a free market.
>
> To this end, the Acts themselves provide powerful incentives for private enforcement through treble damage awards and recovery of attorneys' fees to prevailing parties. This private enforcement scheme has been pursued diligently

since at least the time of the Electrical Equipment Cases some forty years ago (which originated in this very district) by a sophisticated plaintiff bar. No suggestion is made that, at this time, meritorious antitrust cases lie dormant for lack of adequate legal representation or that an appreciable increase in enforcement of the antitrust laws is likely to result from bestowing upon a student legal clinic the benefits of the excess funds.

Second, the distribution to either a law school's legal clinic or a charter school for gifted underprivileged students does not touch upon the subject matter of the law suit (football or sports-related activities). Third, there is no evidence that yet a further reminder by way of publication in a newspaper of national circulation will result in the filing of any significant number of additional claims. Fourth, while the class and the geographic scope of the law suit is nationwide, the relief proposed by plaintiffs would be limited to organizations based in the Philadelphia area.

On the other hand, the defendants' proposal is far from a perfect fit under cy pres principles. Clearly, distribution to the NFL YET Centers would not further the goals of the antitrust laws. Yet, at least the defendants' proposed donee has some involvement in the same area of commerce as the subject matter of the law suit (football or sports-related activities), and the ultimate beneficiaries, unlike the ultimate beneficiaries of the plaintiffs' proposed distribution, are located throughout the country. Under the circumstances and given the alternatives presented to the Court, the Court concludes that the NFL YET Centers best satisfy cy pres principles.

The Court also concludes that payment of the excess funds to the members of the class is impractical (i.e., after administrative costs, each member would receive approximately $3.50), and that escheat to the federal government would serve no public purpose. Finally, the Court will decline the suggestion that it exercise "discretion" and select a donee other than those suggested by the parties.

III.

For all the aforesaid reasons, the excess funds in the amount of $436,000 will be paid to the NFL YET Centers. An appropriate order follows.